# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

KIMBERLY HENDERSON,

      PLAINTIFF,

v.

WASTE CONNECTIONS
OF TENNESSEE, INC.,

      DEFENDANT.

Case No.
**JURY DEMANDED**

---

## VERIFIED COMPLAINT FOR VIOLATIONS
## OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## AND THE AGE DISCRIMINATION IN EMPLOYMENT ACT

---

**COMES NOW** Plaintiff Kimberly Henderson (hereinafter "Plaintiff" or "Ms. Henderson"), by and through undersigned counsel, and files this Complaint against Defendant Waste Connections of Tennessee (hereinafter "WCTN", the "Company," or "Defendant") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act (29 U.S.C. § 621, *et al.* (1967)) and in support states as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action against Defendant based on sex discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

2. Plaintiff further brings this action against Defendant based on age discrimination in violation the Age Discrimination in Employment Act (29 U.S.C. § 621, *et al.* (1967)).

3. Plaintiff is a former employee of Defendant who alleges that Defendant discriminated

against her on the basis of her sex and age, subjected her to a hostile work environment in the form of sex-based harassment, and unlawfully retaliated against Ms. Henderson for engaging in protected activity.

4. Defendant's actions are in direct violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act (29 U.S.C. § 621, *et al.* (1967)).

5. Plaintiff seeks money damages as permitted by applicable law; attorneys' fees, costs, and expenses incurred in this action.

## PARTIES

6. Plaintiff, Ms. Kimberly Henderson, is an adult resident of Memphis, Shelby County, Tennessee.

7. Defendant Waste Connections of Tennessee, Inc. is a for-profit corporation organized under the laws of Delaware. Its principal office is located at 3 Waterway Square Pl Ste 110, The Woodlands, TX 77380.

8. Defendant may be served with process through its registered agent, Corporation Service Company, at 2908 Poston Avenue, Nashville, TN 37203.

## JURISDICTION AND VENUE

9. This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1311 because this case is brought under Title VII, 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act (29 U.S.C. § 621, *et al.* (1967)).

10. Defendant is registered and subject to service of process in Tennessee, employees Tennessee citizens, maintains an office, and does business in the state of Tennessee. Therefore, this Court has personal jurisdiction over Defendant.

11. Venue for this action is proper in this Court and County pursuant to 28 U.S.C. § 1391. The

facts and circumstances which give rise to the causes of action contained within this Complaint occurred in Shelby County, Tennessee, and within this Judicial District.

## FACTUAL ALLEGATIONS

12. Ms. Henderson was hired by Waste Connections on or about April 21, 2008, as the Accounts Payable Clerk.

13. At the time of the termination of her employment, Ms. Henderson reported to Mr. Alex Cantu, the Company's District Controller.

14. During Ms. Henderson's sixteen years of exceptional employment, Ms. Henderson would perform a significant number of duties, including the following:

   - Processing driver payroll;

   - Assisting other districts in the region with their payables when needed;

   - Handling payables for the Region office during the years it was located in Memphis;

   - Handling and distributing daily and express mail;

   - Receiving all court documents, such as garnishments and child support orders;

   - Ordering supplies for multiple locations for the Company, including water and other required supplies for Operations and Shop employees;

   - Assigning and monitoring boot purchases by employees;

   - Booking hotel stays for any travel done within the Region;

   - Planning all holiday, birthday and employee events, such as catered lunches and team building events; and

   - Contacting companies and overseeing jobs when repairs were needed at any of the sites; and filing monthly sales tax for two states.

15. The aforementioned duties were not within Ms. Henderson's job description, but Ms. Henderson performed these tasks because she was a team player, and for a significant portion of Ms. Henderson's employment the Company didn't have an Office Manager in the District.

16. Ms. Henderson asked on numerous occasions about an official promotion Office Manager. However, the Company always declined with the purported reasoning that the District never had one and that the Company set aside no funds in the budget for the position.

17. Yet, in March 2024, Mr. Zay Louis, the District Manager, announced Karen Davis-Vail, formally the Customer Service Supervisor, as Office Manager for the Memphis Market. None of Ms. Henderson's duties were reassigned to Ms. Davis-Vail, and Ms. Davis-Vail is younger than Ms. Kim Henderson.

18. In the preceding months before the end of Ms. Henderson's employment, new management, including Mr. Louis, had joined the Company in the Memphis Market.

19. Ms. Henderson faced new hurdles in a predominantly male organization, who Ms. Henderson found did not respect female employees and even made offensive sexual jokes and comments to her and other female employees.

20. For instance, from around July 2022 until March 2024, Mr. Cornelius Finley, Assistant District Manager, would consistently made inappropriate sexual contact with Ms. Henderson in the workplace, including hugging and kissing Ms. Henderson on the forehead on numerous occasions without her consent.

21. After these instances of harassment, Ms. Henderson would notify Ms. Christina Maloy, the Regional Controller, of Mr. Finley's inappropriate behavior, but Ms. Maloy never took appropriate action to protect Ms. Henderson.

22. Moreover, the management at Waste Connections consistently disrespected Ms. Henderson because of her age.

23. During Mr. Louis's time in the Memphis Market, he consistently made disparaging comments about employees that had a long tenure with the company and about employees of a certain age group.

24. Moreover, in or around May 2024, Mr. Louis had made remarks to Ms. Henderson that her age was preventing her from seeing Mr. Louis's viewpoints.

25. In or around May 2024, Ms. Henderson learned of sexually inappropriate behavior by Mr. Louis and Mr. Finley.

26. Specifically, Ms. Henderson learned from colleagues that Mr. Louis had engaged in inappropriate behavior with Ms. Davis-Vail at an April 2024 employee function an that Mr. Finley had been engaging in an affair with an Operations Supervisor.

27. Having been told information of inappropriate behavior collaborated by numerous employees and having witnessed inappropriate behavior herself, Ms. Henderson felt it necessary to report the behavior to members of management at Waste Connections.

28. Regarding the behavior of Mr. Louis and Ms. Davis-Vail, Ms. Henderson reported the behavior to Ms. Maloy on April 19, 2024.

29. Regarding the behavior of Mr. Finley, Ms. Henderson brought the information regarding Mr. Finley to Ms. Maloy on May 20, 2024.

30. Ms. Henderson also brought the concerns the following day to Mr. Johnnie Robinson, another Operations Supervisor, who confirmed the affair.

31. Soon thereafter, Mr. Louis confronted Ms. Henderson and suspended her, stating that she would need to go home and think about her actions.

32. Because of this, Ms. Henderson contacted Mr. David Parrish, the Corporate Human Resources representative.

33. On May 23, 2024, Mr. Parrish and Ms. Henderson discussed the preceding events, the inappropriate behavior of Mr. Finley and Mr. Louis, and of her suspension; only at that point did Ms. Henderson receive any assurance that she would be paid during her suspension.

34. While Mr. Parrish declared that he would investigate the matters, such an investigation unfortunately turned out to be a sham.

35. Only after several days of purportedly investigating the situation, Mr. Parrish called Ms. Henderson and informed her that he found no truth to the allegations and further that she would be reprimanded for gossiping.

36. During this time, Ms. Henderson also learned from a member of management that she was one of Mr. Louis's next targets due to his distaste for other employees' trust in Ms. Henderson and her courage to come forward with concerns.

37. At this point, Ms. Henderson found it clear that she had no help with the Company and reasonably felt that, if she did not resign, she would be eventually terminated.

38. Unfortunately for Ms. Henderson, the Company's retaliation did not end after the end of her employment, as the Company informed employees, customers, and prospective employers for Ms. Henderson that she had been terminated.

39. The Company's behavior has greatly hindered Ms. Henderson's ability to find new employment.

40. At the time her employment ended, Ms. Henderson was 52 years old.

## COUNT I - SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

41. Plaintiff hereby incorporates all allegations contained in Paragraphs 1-41 as if they were fully set forth herein.

42. In order to establish a prima facie case of hostile environment sexual harassment, the plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected

6

to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with her work performance and an intimidating, hostile, or offensive working environment that affected seriously her psychological well-being; and (5) the existence of respondeat superior liability. *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 619-20 (6th Cir.1986); *Sconce v. Tandy Corp.*, 9 F. Supp.2d 773, 776 n. 5 (W.D.Ky.1998); *See also Williams v. General Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir.1999).

43. In order to establish the fourth element of a prima facie claim, the plaintiff must show that the harassing behavior was (1) severe and pervasive and (2) both objectively and subjectively offensive. In reviewing her claim on this basis, the court looks to the totality of the circumstances. *Williams*, 187 F.3d at 562.

44. The totality-of-circumstances test must be construed to mean that even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation. *Id.* at 563.

45. Here, as a woman, Ms. Henderson was a member of a protected class under Title VII.

46. For many months, Ms. Henderson was subjected to unwelcome sexual harassment by management members of the Company, particularly Mr. Finley.

47. This harassment came in the form principally of inappropriate sexual comments to sexual touching. On numerous occasions, Ms. Henderson reported this conduct to other members of management to no avail.

48. The harassment was certainly severe and pervasive enough to interfere with her work performance and her overall well-being, especially considering that this behavior persisted for months despite her complaints.

49. Such harassment was undertaken by members of management in the scope of their duties and the Company was fully aware of the harassment, thus respondeat superior liability exists here.

50. As such, Defendant subjected Ms. Henderson to unlawful sexual harassment in violation of Title VII.

## COUNT II – UNLAWFUL RETALIATION UNDER TITLE VII

51. Plaintiff hereby incorporates all allegations contained in Paragraphs 1-50 as if fully set forth herein.

52. To establish a prima facie claim of Title VII retaliation, Plaintiff must show: (1) that she engaged in a protected activity, (2) her exercise of such protected activity was known by Defendant, (3) thereafter, Defendant took an action that was materially adverse to her, and (4) a causal connection existed between the protected activity and the materially adverse action. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 468-69 (6th Cir. 2012).

53. A constructive discharge is an adverse employment action for purposes of Title VII. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). (citing *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)).

54. "A constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Id.* (internal quotation marks omitted).

55. For a constructive discharge claim, a plaintiff must show that (1) "the employer deliberately created intolerable working conditions, as perceived by a reasonable person," and (2) "the employer did so with the intention of forcing the employee to quit." *Id.* at 727-28 (citing *Saroli v. Automation and Modular Components, Inc.*, 405 F.3d 446 (6th Cir. 2005); *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001)).

56. Here, Ms. Henderson engaged in protected activity on numerous occasions.

57. Up until March 2024, Ms. Henderson submitted complaints regarding sexual harassment against her and others by Mr. Finley.

58. Moreover, Ms. Henderson reported inappropriate sexual behavior by Mr. Louis and Mr. Finley in April and May 2024.

59. For a period of months, Ms. Henderson had to witness and encounter intolerable working conditions, ranging from inappropriate sexual harassment to retaliation for complaining to management to protect herself and her colleagues.

60. After her suspension and unfounded writeup in May 2024, days after her last complaint, Ms. Henderson reasonably felt that she would be terminated if she did not resign. Given the Company's behavior in going out of its way to inform others that Ms. Henderson had actually been terminated, it is clear that the Company fully intended to force Ms. Henderson to resign.

61. Moreover, the Company has attempted to disguise its retaliatory efforts as Ms. Henderson "gossiping," when that is simply not the case as Ms. Henderson has only reported inappropriate conduct to members of management after experiencing, witnessing, or hearing of such conduct by those she trusts.

62. Before the Company's retaliatory behavior, Ms. Henderson learned that she was a "target" of Mr. Louis and that he suspended Ms. Henderson with the threat that she should "think about her actions."

63. As such, Defendant unlawfully retaliated against Ms. Henderson for engaging in protected activity in violation of Title VII.

### COUNT III – AGE DISCRIMINATION IN VIOLATION OF THE ADEA

64. Plaintiff hereby incorporates all allegations contained in Paragraphs 1-63 as if fully set forth herein.

65. To establish a prima facie case of age discrimination for failure to promote under the Age

Discrimination in Employment Act ("ADEA"), a plaintiff must show that (1) she is a member of the protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000)); *cf. Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 16 (6th Cir. 2007).

66. Here, Ms. Henderson is in a protected class as she is over 40 years old.

67. Over a period of sixteen years of exceptional employment, Ms. Henderson went well above and beyond her duties within her job description; she performed numerous crucial administrative tasks and merited a promotion to Office Manager, which entailed such duties.

68. For years, whenever Ms. Henderson inquired about her interest in the Office Manager position, the Company gave Ms. Henderson the excuse that it had set aside no funds in the budget for the position.

69. Yet, in March 2024, the Company promoted Karen Davis-Vail, a much younger employee, as Office Manager for the Memphis Market. Moreover, none of Ms. Henderson's additional administrative duties were reassigned to Ms. Davis-Vail.

70. Furthermore, Ms. Henderson can establish a prima facie case of disparate treatment age discrimination under the ADEA.

71. Here, Ms. Henderson must show (1) "that she is a member of a protected group," (2) "that she was subject to an adverse employment decision," (3) "that she was qualified for the position," and (4) "that she was replaced by a person outside of the protected class." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)).

72. In disparate treatment cases, the fourth element may be replaced with the requirement that the plaintiff show she was treated differently from similarly-situated individuals. *Mitchell*, 964 F.2d at 582-83.

73. A constructive discharge is an adverse employment action for purposes of Title VII. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). (citing *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). "A constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Id.* (internal quotation marks omitted).

74. For a constructive discharge claim, a plaintiff must show that (1) "the employer deliberately created intolerable working conditions, as perceived by a reasonable person," and (2) "the employer did so with the intention of forcing the employee to quit." *Id.* at 727-28 (citing *Saroli v. Automation and Modular Components, Inc.*, 405 F.3d 446 (6th Cir. 2005); *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001))

75. Here, Ms. Henderson has established that she is in a protected class.

76. By going above and beyond her duties for a period of sixteen years and her consistent performance as a team player for the Company, Ms. Henderson was qualified for her position.

77. Ms. Henderson suffered numerous adverse employment actions, including but limited to intolerable working conditions, her suspension and reprimand in May 2024, and her constructive discharge.

78. For a period of months, Ms. Henderson had to witness and encounter intolerable working conditions, ranging from inappropriate sexual harassment to retaliation for complaining to management to protect herself and her colleagues.

79. After her suspension and unfounded writeup in May 2024, Ms. Henderson reasonably felt

that she would be terminated if she did not resign.

80. Given the Company's behavior in going out of its way to inform others that Ms. Henderson had actually been terminated, it is clear that the Company fully intended to force Ms. Henderson to resign.

81. Furthermore, the Company treated similarly situated younger employees differently than Ms. Henderson.

82. For instance, Mr. Louis had a well-established animus towards older employees, going as far as telling Ms. Henderson that her age was preventing her from seeing his viewpoints.

83. Moreover, regarding the Office Manager position, the Company preferred younger employees for positions despite Ms. Henderson establishing her qualifications.

84. As such, Defendant unlawfully discriminated against Ms. Henderson on the basis of her age.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kimberly Henderson prays for relief as follows:

A. Declare that the acts and practices complained of herein are in violation of Title VII and the ADEA;

B. Order Defendant to make Plaintiff whole by providing appropriate back pay and front pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

C. Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein, in amounts to be determined at trial;

E. Order Defendant to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of herein, including

emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

F. Order Defendant to pay Plaintiff punitive damages for its malicious and reckless conduct described herein, in amounts to be determined at trial;

G. Award Plaintiff her reasonable attorney's fees and costs of this action; and,

H. Grant such further relief as the Court deems necessary and proper.

**PLAINTIFF DEMANDS A JURY TO TRY ALL ISSUES SO TRIABLE**

Dated: March 10, 2026

Respectfully Submitted,

*s/ W. Patrick Crone*
Alan G. Crone, TN Bar No. 014285
W. Patrick Crone, TN Bar No. 039578
BARRETT & FARAHNY
88 Union Avenue, Suite 420
Memphis, TN 38103
901-737-7740 (voice)
901-474-7926 (fax)
acrone@justiceatwork.com
pcrone@justiceatwork.com

*Attorneys for Plaintiff*

## DECLARATION & VERIFICATION

I, Kimberly Henderson, verify and declare that the facts stated in the foregoing Verified Complaint for violations of Title VII and the ADEA are true to the best of my knowledge and belief, and that the Complaint was not made out of levity or by collusion with Defendant but in sincerity and truth for the causes mentioned in the Complaint.

**Kimberly Henderson**

03/10/2026

Date

# K. Henderson Complaint WPC 03.10.2026 TO SIGN

Final Audit Report                                                                    2026-03-10

| | |
|---|---|
| Created: | 2026-03-10 |
| By: | Patrick Crone (pcrone@justiceatwork.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAxWh5_80OVb4s3wk8dJ4dkAcliwR9gqPw |

## "K. Henderson Complaint WPC 03.10.2026 TO SIGN" History

📄 Document created by Patrick Crone (pcrone@justiceatwork.com)
  2026-03-10 - 6:59:04 PM GMT

📧 Document emailed to Kimberly Henderson (hendersonk50@yahoo.com) for signature
  2026-03-10 - 6:59:09 PM GMT

📄 Email viewed by Kimberly Henderson (hendersonk50@yahoo.com)
  2026-03-10 - 6:59:35 PM GMT

✍ Document e-signed by Kimberly Henderson (hendersonk50@yahoo.com)
  Signature Date: 2026-03-10 - 7:00:35 PM GMT - Time Source: server

✅ Agreement completed.
  2026-03-10 - 7:00:35 PM GMT

🅰 **Adobe Acrobat Sign**